Slip Op. 15-23

## UNITED STATES COURT OF INTERNATIONAL TRADE

———————————————————

| | | |
|---|---|---|
| FENGCHI IMP. & EXP. CO., LTD. | : | |
| OF HAICHENG CITY, FENGCHI | : | |
| REFRACTORIES CO. OF HAICHENG | : | |
| CITY, and FEDMET RESOURCES | : | |
| CORPORATION, | : | |
| | : | |
| Plaintiffs, | : | Before: Nicholas Tsoucalas, |
| | : | Senior Judge |
| v. | : | |
| | : | Court No.: 13-00186 |
| UNITED STATES, | : | |
| | : | |
| Defendant, | : | |
| | : | |
| and | : | |
| | : | |
| RESCO PRODUCTS, INC., and | : | |
| ANH REFRACTORIES COMPANY, | : | |
| | : | |
| Defendant-Intervenors.: | | |

———————————————————

## OPINION and ORDER

[Plaintiffs' motion for judgment on the agency record is denied.]

Dated: March 25, 2015

Donald B. Cameron, Brady W. Mills, Julie C. Mendoza, Mary S. Hodgins, R. Will Planert, and Sarah S. Sprinkle, Morris Manning & Martin LLP, of Washington, DC, for plaintiffs.

Melissa M. Devine, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for defendant. With her on the brief were Stuart F. Delery, Assistant Attorney General, Jeanne E. Davidson, Director, and Patricia M. McCarthy, Assistant Director. Of counsel on the brief was Whitney M. Rolig, Attorney, Office of the Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce, of Washington, DC.

Camelia C. Mazard, Robert W. Doyle, Jr., and Andre P. Barlow, Doyle Barlow & Mazard PLLC of Washington, DC, for defendant-intervenor Resco Products, Inc.

Joseph W. Dorn and Brian E. McGill, King & Spalding LLP, of Washington, DC, for defendant-intervenor ANH Refractories Company.

        Tsoucalas, Senior Judge: Plaintiffs Fengchi Import and Export Co., Ltd. of Haicheng City, Fengchi Refractories Co. of Haicheng City, and Fedmet Resources Corporation (collectively "Plaintiffs"), move for judgment on the agency record contesting defendant United States Department of Commerce's ("Commerce") determination in Certain Magnesia Carbon Bricks From the People's Republic of China: Final Results and Final Partial Rescission of Antidumping Duty Administrative Review; 2010-2011, 78 Fed. Reg. 22,230 (Apr. 15, 2013) ("Final Results"). Commerce and defendant-intervenors, Resco Products Inc. and ANH Refractories Company, oppose Plaintiffs' motion. For the following reasons, Plaintiffs' motion is denied.

## BACKGROUND

        Magnesia carbon bricks ("MCBs") from the People's Republic of China ("PRC") are subject to an antidumping duty order. See Certain MCBs From Mexico and the PRC: Antidumping Duty Orders, 75 Fed. Reg. 57,257 (Sept. 20, 2010) ("Orders"). On October 31, 2011, Commerce initiated an administrative review of the Orders, covering sales of subject merchandise between March 12, 2010 and August 31, 2011 ("2010-2011 Administrative Review"). See

Initiation of Antidumping and Countervailing Duty Administrative

Reviews and Request for Revocation in Part, 76 Fed. Reg. 67,133,

67,135 (Oct. 31, 2011).  Commerce named Fengchi Import and Export

Co., Ltd. of Haicheng City and Fengchi Refractories Co. of Haicheng

City, as mandatory respondents.[1]  Id.  Fedmet, a domestic importer

of Fengchi's merchandise, joined the review as an interested party.

See Letter to Commerce re: Antidumping Duty Order on Certain MCBs

from the PRC, Administrative Review (3/12/10–8/31/11): Entry of

Appearance and APO Application (Oct. 31, 2012), Public Rec.[2] 137

at 1.  On March 14, 2012, Commerce issued its standard nonmarket

economy questionnaire to Fengchi, seeking information on Fengchi's

factors of production and U.S. sales of subject merchandise.  See

MCBs from the PRC: Antidumping Duty Questionnaire, (Mar. 14, 2012)

PR 62 at 1.

Concurrent with 2010–2011 Administrative Review,

Commerce conducted a scope inquiry to determine whether magnesia

alumina carbon bricks ("MACBs") from the PRC were subject to the

Orders.  See Certain MCBs from the PRC: Issues and Decision

---

[1] Fengchi Import and Export Co., Ltd. of Haicheng City is a Chinese exporter of MCBs, and Fengchi Refractories Co. of Haicheng City is its affiliated producer.  See Final Results, 78 Fed. Reg. at 22,230.  Throughout the opinion, the court will refer to them collectively as "Fengchi."

[2] Hereinafter, documents in the public record will be designated "PR" and documents in the confidential record designated "CR" without further specification except where relevant.

Memorandum for the Final Results of the 2010-2011 Administrative Review, (Apr. 9, 2013) PR 148 at 1-2 ("IDM").  On July 2, 2012, Commerce issued the final results of its scope inquiry, determining that MACBs were within the scope of the Orders.  See Certain MCBs from the PRC and Mexico: Final Scope Ruling — Fedmet Resources Corporation at 1-2, Case Nos. A-201-837, A-570-954 and C-570-955 (July 2, 2012) ("MACB Scope Ruling").

        After issuing the MACB Scope Ruling, Commerce sent a supplemental questionnaire to Fengchi indicating its intention to consider sales of MACBs as part of the 2010-2011 Administrative Review.  See First Antidumping Administrative Review of Certain MCBs from the PRC: Sections C and D Supplemental Questionnaire,[3] (Aug. 3, 2012) CR 46 at 3.  Moreover, Commerce requested that Fengchi confirm whether it had reported all sales of subject merchandise, including MACBs, in its initial questionnaire responses, and if not, it requested that Fengchi provide such

---

[3] Petitioner ANH Refractories Company ("ANH") requested that Commerce include MACB sales in the 2010-2011 Administrative Review after Commerce issued the preliminary results of the scope inquiry. See Letter to Commerce re: MCBs from China: Scope of the Administrative Review, (Apr. 18, 2012) CR 22 at 2.  Fengchi responded that Commerce's preliminary scope ruling was not a final determination and thus Commerce should not require Fengchi to provide information on its MACB sales. See Letter to Commerce re: Antidumping Order on Certain MCBs from the PRC; Antidumping Duty Administrative Review, PR 67 at 1-3 (Apr. 23, 2012).  However, Commerce did not request information on Fengchi's MACB sales during the 2010-2011 Administrative Review until after it issued the MACB Scope Ruling. See CR 46 at 3.

information.  See id.  Additionally, Commerce provided Fengchi with sales data it acquired from U.S. Customs and Border Protection ("CBP") indicating that Fengchi made entries of MACBs during the period of review ("POR").  See id., att. 2 at 1.

Fengchi did not provide information on its MACB sales in its response to the supplemental questionnaire, but instead, submitted a series of letters to Commerce in which it insisted that Commerce's request was improper.  See Letter to Commerce re: Antidumping Order on Certain MCBs from the PRC; Antidumping Duty Administrative Review (3/12/10-8/31/11), (Aug. 9, 2012) PR 104 at 1-5; Letter to Commerce re: Antidumping Order on Certain MCBs from the PRC; Antidumping Duty Administrative Review (3/12/10-8/31/11), (Aug. 14, 2012) PR 106 at 1-2; Letter to Commerce re: Antidumping Order on Certain MCBs from the PRC; Antidumping Duty Administrative Review (3/12/10-8/31/11), (Aug. 29, 2012) PR 114 at 2-4.  Fengchi argued that Commerce's request was "extremely unreasonable" and "well past the 90-day deadline" under 19 C.F.R. § 351.225(l)(4), because Commerce initiated the 2010-2011 Administrative Review eight months before it issued the MACB Scope Ruling.  See PR 104 at 3, 4.  Commerce offered to extend the deadline for Fengchi to provide MACB sales information on multiple occasions, but Fengchi continuously declined to comply with Commerce's request for information.  See Letter to Fengchi re: First Antidumping

Administrative Review of Certain MCBs from the PRC, (Sept. 7, 2012) PR 125 at 1-2.

Commerce issued the <u>Preliminary Results</u> of the 2010-2011 Administrative Review in October 2012.  <u>See</u> <u>Certain MCBs From the PRC: AD Administrative Review; 2010-2011</u>, 77 Fed. Reg. 61,394 (Oct. 9, 2012) ("<u>Preliminary Results</u>").  <u>See also</u> <u>Decision Memorandum for Preliminary Results of Antidumping Duty Administrative Review: Certain MCBs from the PRC</u>, PR 132 (Oct. 1, 2012) ("<u>PRM</u>").  Commerce determined that Fengchi's refusal to provide information on its MACBs sales constituted a failure to cooperate with the review to the best of its ability and applied total adverse facts available ("AFA").  <u>PRM</u> at 8-9.  It selected an AFA rate of 236%, based on the petition rate from the investigation.  <u>PRM</u> at 10.

Commerce issued the <u>Final Results</u> in April 2013, upholding the <u>Preliminary Results</u> in their entirety.  <u>Final Results</u>, 78 Fed. Reg. at 22,230; <u>see</u> <u>IDM</u> at 1.

## JURISDICTION and STANDARD OF REVIEW

The Court has jurisdiction pursuant to 28 U.S.C. § 1581(c) (2012) and section 516A(a)(2)(B)(iii) of the Tariff Act of 1930,[4] as amended, 19 U.S.C. § 1516a(a)(2)(B)(iii) (2012).  The court will uphold Commerce's final determination in an antidumping

---

[4] Further citations to the Tariff Act of 1930 are to the relevant portions of Title 19 of the U.S. Code, 2006 edition, and all applicable amendments thereto.

duty administrative review unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law."  19 U.S.C. § 1516a(b)(1)(B)(i).  Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Universal Camera Corp. v. NLRB, 340 U.S. 474, 477 (1951).

Additionally, when reviewing an agency's interpretation of its regulations, the court must give substantial deference to the agency's interpretation, Michaels Stores, Inc. v. United States, 766 F.3d 1388, 1391 (Fed. Cir. 2014) (citing Torrington Co. v. United States, 156 F.3d 1361, 1363-64 (Fed. Cir. 1998)), according it "'controlling weight unless it is plainly erroneous or inconsistent with the regulation.'" Thomas Jefferson Univ. v. Shalala, 512 U.S. 504, 512, (1994) (citations omitted); accord Viraj Group v. United States, 476 F.3d 1349, 1355 (Fed. Cir. 2007). In this context, "[d]eference to an agency's interpretation of its own regulations is broader than deference to the agency's construction of a statute, because in the latter case the agency is addressing Congress's intentions, while in the former it is addressing its own." Viraj, 476 F.3d at 1355 (quoting Gose v. U.S. Postal Serv., 451 F.3d 831, 837 (Fed. Cir. 2006).

## DISCUSSION

Plaintiffs contests the following aspects of the Final Results:  Commerce's request for sales information on MACBs;

Commerce's application of AFA; Commerce's selection of 236% as the AFA rate.  See Pls.' Br. Supp. Mot. J. Agency R. at 8-23 ("Pls.' Br.").

As an initial matter, the Court of Appeals for the Federal Circuit ("CAFC") issued an opinion overturning the MACB Scope Ruling on June 20, 2014, after the completion of briefing in this case.  See Fedmet Res. Corp. v. United States, 755 F.3d 912, 914 (Fed. Cir. 2014).  Plaintiffs argue in their brief that a reversal of the MACB Scope Ruling will resolve the issues in this case because "there would be no lawful basis for Commerce to impose antidumping duties on [MACBs] under the [Orders], and thus, no lawful basis for Commerce to have directed Fengchi to report sales of [MACBs] in the administrative review."  Id.  The court must reject this argument.  The Fedmet litigation concerned the MACB Scope Ruling.  Fedmet, 755 F.3d at 914.  In contrast, this case concerns Commerce's ability to request information on products subject to a scope ruling during an administrative review and its imposition of AFA after Fengchi declined to comply with that request.  Thus, the CAFC's decision in Fedmet does not resolve the legal issues raised in the instant case.

## I. Commerce's Request for Information on Fengchi's MACB Sales

The first issue before the court is whether Commerce properly requested that Fengchi provide information on its sales of MACBs during the review.  As noted above, Fengchi declined to

provide such information on the theory that Commerce's request violated 19 C.F.R. § 351.225(l)(4). As a result of Fengchi's refusal to provide information, Commerce imposed AFA. Plaintiffs claim that Commerce's request was inconsistent with 19 C.F.R. § 351.225(l)(4) because Commerce issued the scope ruling on MACBs 245 days after the initiation of the review. Pls.' Br. at 8. Alternatively, Plaintiffs claim that even if Commerce's interpretation of the regulation was proper, it was nevertheless impractical for Commerce to request that information so late in the review. Id. at 14-16.

## A. Commerce's interpretation of 19 C.F.R. § 351.225(l)(4) was reasonable.

Under 19 C.F.R § 351.225(l)(4), where Commerce issues a scope ruling that a product is within the scope of an order within ninety days of the initiation of an administrative review of that same order, Commerce, "where practicable, will include sales of that product for purposes of the review and will seek information regarding such sales." 19 C.F.R § 351.225(l)(4). However, where Commerce issues the scope ruling more than ninety days after the initiation of the administrative review, Commerce "may consider sales of the product for purposes of the review on the basis of non-adverse facts available." Id. "However, notwithstanding the pendency of a scope inquiry, if [Commerce] considers it appropriate, [Commerce] may request information concerning the

product that is the subject of the scope inquiry for purposes of a review . . . ." Id.

Here, Commerce issued the scope ruling on MACBs 245 days after initiating the administrative review at issue. See PRM at 8. As noted above, Commerce requested information on Fengchi's MACB sales shortly after issuing the scope ruling, see CR 46 at 3, but Fengchi declined to provide the information, insisting that Commerce's request was improper. See PR 104 at 1. Commerce insisted that its request was consistent with section 351.225(l)(4) because the regulation does not prohibit Commerce from soliciting information on products that are subject to a scope ruling issued over ninety days after the review begins. IDM at 4-5. Rather, according to Commerce, the regulation permits Commerce to decline to collect information in such situations and instead consider sales of the product on the basis of non-adverse facts available. Id.

Plaintiffs insist that Commerce's reading of section 351.225(l)(4) is unreasonable. Instead, Plaintiffs suggest that the regulation creates a "bright-line rule": if the scope ruling is issued within ninety days of the initiation of the administrative review, then Commerce will request information on the product subject to that scope ruling if practicable, but if the scope ruling is issued more than ninety days after the initiation of the review, then Commerce may not request information

on the product and may only consider sales of the product based on
non-adverse facts available.  <u>See</u> Pls.' Br. at 8-11.  According to
Plaintiffs, Commerce's interpretation renders the ninety-day time
limit, and therefore much of the regulation itself, "mere
surplusage."  <u>Id.</u> at 13.  Moreover, Plaintiffs insist that Commerce
indicated that their reading of the regulation was proper during
promulgation of the regulation, and in fact, acted in a manner
consistent with this interpretation in a prior administrative
review.  <u>See id.</u> at 11-14.

    The court must reject Plaintiffs' interpretation because
it alters the plain meaning of the regulation.  According to
Plaintiffs, where Commerce issues a scope ruling more than ninety
days after the initiation of an administrative review, Commerce
may consider sales of the product for purposes of the review, "but
<u>only</u> on the basis of non-adverse facts available."  <u>Id.</u> at 8
(emphasis added).  This "bright-line rule" reads the word "only"
into the second sentence of the regulation.  However, section
351.225(l)(4) provides that in such situations, Commerce "<u>may</u>
consider sales of the product for purposes of the review on the
basis of non-adverse facts available."  19 C.F.R. § 351.225(l)(4)
(emphasis added).  The language of the regulation is permissive
and does not proscribe Commerce's power to request information in
the manner Plaintiffs suggest.

Furthermore, Plaintiffs reliance on the regulatory history of section 351.225(l)(4) is misplaced. According to Plaintiffs, Commerce adopted their interpretation of section 351.225(l)(4) at the preliminary rule making stage. Pls.' Br. at 10-12. In particular, Plaintiffs rely on Commerce's comment that, when a final scope ruling is issued more than ninety days after initiation of a review, it is "not practicable" to collect sales information and therefore Commerce "will rely on non-adverse facts available." Id. at 11 (citing Antidumping Duties; Countervailing Duties: Proposed Rules, 61 Fed. Reg. 7308, 7322 (Feb. 27, 1996)). However, Commerce clearly departed from this interpretation by the final rule making stage. Commerce stated that section 351.225(l)(4) "provides, among other things, that if [Commerce] determines after [ninety] days of the initiation of a review that a product is included within the scope of an order or suspended investigation, [Commerce] may decline to seek sales information concerning the product for purposes of the review." Antidumping Duties; Countervailing Duties: Final Rule, 62 Fed. Reg. 27,296, 27,330 (May 19, 1997) ("Preamble"). Thus, at the final rulemaking stage, Commerce did not limit itself to reliance on non-adverse facts available, but instead provided itself with flexibility to determine whether to collect information. See id.

Plaintiffs also rely on two separate statements by Commerce at the final rule making stage to support its

interpretation.   First, Plaintiffs note that Commerce rejected a request to extend the ninety-day period when it extends the deadline for the preliminary results of a review, indicating that Commerce did not intend to collect information where the scope ruling is issued after the ninety-day period.  See Pls.' Br. at 11.   Plaintiffs misinterpret Commerce's decision; Commerce rejected the request because it generally makes the decision to extend a deadline for the preliminary results of a review right before that deadline expires and well after the ninety-day period ends.  Preamble, 62 Fed. Reg. at 27,330.  Second, Plaintiffs note that Commerce rejected a suggestion that it collect information for a subsequent review when the scope ruling is issued after the ninety-day period.  See Pls.' Br. at 11–12.  This decision also does not support Plaintiffs' argument; Commerce rejected the suggestion because it was unwilling to collect information for a future review.  Preamble, 62 Fed. Reg. at 27,330.

Moreover, the prior administrative decision that Plaintiffs cite does not support their position.  Plaintiffs rely on Final Results of Antidumping Duty Administrative Review for Two Manufacturers/Exporters: Certain Preserved Mushrooms From the PRC, 65 Fed. Reg. 50,183 (Aug. 17, 2000).  See Pls.' Br. at 12.  However, in that case, Commerce issued the scope ruling within ninety days of initiating the review, and thus Commerce did not address the situation before the court in the instant case.   Issues and

Decision Memorandum for the Administrative Review of Certain Preserved Mushrooms from the PRC – May 7, 1998, through January 31, 2000; Final Results at comment 1 (Aug. 17, 2000).

Ultimately, Commerce's interpretation of section 351.225(l)(4) was consistent with the plain language of the regulation. Section 351.225(l)(4) does not proscribe Commerce's power to collect information on a respondent's sales of a product subject to a scope ruling issued over ninety-days after the initiation of the review, so long as it is practicable to do so. 19 C.F.R. § 351.225. It does, however, permit Commerce to decline to collect such information and instead rely on non-adverse facts available. Id. Contrary to Plaintiffs' argument, Commerce's interpretation does not render any language in the regulation meaningless: if the scope ruling is issued within ninety-days of the initiation of the review, Commerce, where practicable, will collect information on the product subject to that scope ruling; if the scope ruling is issued more than ninety-days after the initiation of the review, Commerce may collect information on the product, if practicable, but may decline to consider the respondent's information and rely instead on non-adverse facts available. See id. As discussed above, this interpretation is consistent with Commerce's discussion of section 351.225(l)(4) when promulgating the final rule. See Preamble, 62 Fed. Reg. at 27,330. Because Commerce's interpretation of the regulation was

not plainly erroneous or inconsistent with the regulation, the court defers to Commerce's reading of 19 C.F.R § 351.225(l)(4). See Thomas Jefferson Univ. v. Shalala, 512 U.S. 504, 512, (1994) (citations omitted); accord Viraj Group v. United States, 476 F.3d 1349, 1355 (Fed. Cir. 2007).

### B. Commerce reasonably determined that it was practicable to request MACBs sales information.

Having determined that Commerce's interpretation of section 351.225(l)(4) was reasonable, the court now considers whether it was practicable for Commerce to request information on Fengchi's MACBs sales. Plaintiffs insist that there was not sufficient time remaining in the review for Commerce to consider Fengchi's sales of MACBs. Pls.' Br. at 14-17. Specifically, Plaintiffs argue that because consideration of its MACB sales data would require Commerce to modify the CONNUM[5] product hierarchy, surrogate country, and surrogate value data, there was not sufficient time remaining in the review. Id. at 15-16.

The court must reject Plaintiffs' assertion because it was practicable for Commerce to request information on Fengchi's MACB sales in this proceeding. Here, Commerce requested that Fengchi provide information on its MACB sales on August 3, 2012, CR 46 at 3, well before the October 1, 2012 deadline for its

---

[5] CONNUM stands for "control number," which refers to a specific product.

preliminary determination.  PRM at 3.  Commerce repeatedly offered

to extend the deadline for Fengchi to provide the requested

information, See, e.g., Letter to Fengchi re: First Antidumping

Administrative Review of Certain MCBs from the PRC: Extension of

Time for Supplemental Questionnaire, PR 111 at 1 (Aug. 24, 2012),

but Fengchi declined to comply with Commerce's request.  See PR

104; PR 106; PR 114.  On September 7, 2012, Commerce offered

Fengchi one final opportunity to comply, requesting that Fengchi

either provide MACB sales information or submit a request for an

extension by September 17, 2012.  See PR 125 at 1–2.  Once again,

Fengchi declined to provide its MACB sales information.  See Letter

to Commerce re: Antidumping Order on Certain MCBs from the PRC:

Antidumping Administrative Review (3/12/10-8/31/11), PR 130 at 1–

2 (Sept. 17, 2012).

        Furthermore, the court does not find merit to

Plaintiffs' argument that Commerce would have to modify the CONNUM

product hierarchy, surrogate country, and surrogate value data in

order to consider information on Fengchi's MACB sales.  Commerce

determined that MACBs were MCBs within the scope of the Orders,

and therefore it was unnecessary to modify CONNUM product

hierarchy, surrogate country, and surrogate value data.  See IDM

at 8.  Because it was practicable to consider Fengchi's MACBs sales

at the time of the <u>MACB Scope Ruling</u>, Commerce reasonably requested

that data during the review.[6]  <u>See</u> 19 C.F.R. § 351.225(l)(4).

### II. Commerce's Application of Adverse Facts Available

The next issue is whether Commerce properly relied on

AFA when determining Fengchi's dumping margin.  As noted above,

Commerce found that AFA was appropriate because Fengchi refused to

provide information on its MACB sales.

Commerce may apply AFA where "an interested party has

failed to cooperate by not acting to the best of its ability to

comply with a request for information."  19 U.S.C. § 1677e(b).

"Compliance with the 'best of its ability' standard is determined

by assessing whether the respondent has put forth its maximum

effort to provide Commerce with full and complete answers" to a

request for information.  <u>Nippon Steel Corp. v. United States</u>, 337

F.3d 1373, 1382 (Fed. Cir. 2003).

Although Fengchi concedes that it did not provide

information on its MACB sales, Plaintiffs argue that Commerce

erroneously applied AFA because the request itself was improper.

<u>See</u> Pls.' Br. at 18–21.  As noted above, Plaintiffs insist that

Commerce's request for Fengchi's MACB sales information violated

---

[6] Commerce also argues that it had the authority to request MACB sales information at "any time during the proceeding" pursuant to 19 C.F.R § 351.301(c)(2) (2012).  Because Commerce properly requested MACB sales information under 19 C.F.R § 351.225(l)(4), the court declines to consider this alternative justification.

19 C.F.R. § 351.225(l)(4). Plaintiffs conclude that Commerce could not impose AFA based on Fengchi's failure to comply with an inappropriate request for information. See Pls.' Br. at 18. Plaintiffs rely on Laclede Steel Co. v. United States, 18 CIT 965 (1994), where the Court overturned Commerce's decision to impose AFA because Commerce's request for information was improper. See Pls.' Br. at 19 (citing Laclede Steel, 18 CIT at 973).

Plaintiffs' argument is unconvincing. As this court has already determined, Commerce's request for Fengchi's MACB sales information was proper. Accordingly, Plaintiffs' reliance on Laclede Steel is misplaced. Ultimately, Fengchi's refusal to provide information on its MACB sales demonstrated a failure to comply with Commerce's request for information, and thus, Commerce reasonably applied AFA. See 19 U.S.C. § 1677e(b); Nippon Steel, 337 F.3d at 1382.

### III. The Adverse Facts Available Rate

Having determined that Commerce properly relied on AFA to determine Fengchi's dumping margin, the court now considers whether Commerce properly selected the petition rate of 236% as the AFA rate. Consistent with its practice, Commerce selected the petition rate as the AFA rate. See PRM at 10. Commerce found that the petition rate was reliable because it calculated the 236% figure as the AFA rate for the PRC-wide entity during the investigation, which it then corroborated using model-specific

margins of a cooperating respondent.  See First Administrative
Review of MCBs from the PRC: Corroboration Memorandum (Oct. 1,
2012), CR 68 at 2-3 (unchanged in final).  Commerce determined
that the rate was relevant to Fengchi by comparing the CBP data
for Fengchi's five MACB sales with the data Commerce used to
determine the petition rate.  Id. at 3.  Specifically, Commerce
found that the U.S. sales price from the petition rate was within
the range of the average unit values for Fengchi's entries.  Id.
Additionally, Commerce found that the usage rates for the factors
of production in the petition were within the range of values of
Fengchi's reported usage rates.  Id.  Because the rate was both
reliable and relevant to Fengchi, Commerce found that it adequately
corroborated the petition rate of 236%.  Id.

        When selecting an AFA rate, Commerce may rely on
information from the petition, investigations, prior
administrative reviews, or "any other information placed on the
record." 19 U.S.C. § 1677e(b).  However, Commerce cannot select
any rate as the AFA rate, but rather, must select an AFA rate that
is "a reasonably accurate estimate of the respondent's actual rate,
albeit with some built-in increase intended as a deterrent to non-
compliance." F.lli De Cecco Di Filippo Fara S. Martino S.p.A. v.
United States, 216 F.3d 1027, 1032 (Fed. Cir. 2000). "Commerce
must select secondary information that has some grounding in
commercial reality." Gallant Ocean (Thailand) Co. v. United

States*, 602 F.3d 1319, 1324 (Fed. Cir. 2010).  Although a higher
AFA rate creates a stronger incentive to cooperate, "Commerce may
not select unreasonably high rates having no relationship to the
respondent's actual dumping margin." Id. at 1323 (citing De Cecco*,
216 F.3d at 1032).

     The   requirements   articulated   by   the   CAFC   are   an
extension of the statute's corroboration requirement.  See De
Cecco, 216 F.3d at 1032.  Under 19 U.S.C. § 1677e(c), when Commerce
relies  on  secondary  information,  it  "shall,  to  the  extent
practicable, corroborate that information from independent sources
that are reasonably at [its] disposal." 19 U.S.C. § 1677e(c).  To
corroborate secondary information, Commerce must find that it has
"probative value." See KYD, Inc. v. United States, 607 F.3d 760,
765 (Fed. Cir. 2010).  Secondary information has "probative value"
if it is "reliable" and "relevant" to the respondent.  Mittal Steel
Galati S.A. v. United States, 31 CIT 730, 734, 491 F. Supp. 2d
1273, 1278 (2007); see KYD, 607 F.3d at 765–67.

     Plaintiffs argue that the AFA rate was unreasonable,
overly punitive, and did not reflect commercial reality.  Pls.'
Br. at 21–23.  According to Plaintiffs, "Commerce never calculated
the actual dumping margin . . . on Fengchi's reported MCBs sales,
electing instead to apply [AFA] to all of Fengchi's sales of
subject merchandise. . . ."  Id. at 22.  Plaintiffs conclude that
"in selecting among possible AFA rates, Commerce blinded itself to

Fengchi's actual dumping margin on the MCB sales it had reported
even as it ostensibly considered whether the AFA rate from the
petition reflected commercial reality."  Id. at 22-23.

        While the instant case was before the court, the Federal
Circuit issued a decision in Fedmet Resources Corp. v. United
States, 755 F.3d. 912, (Fed. Cir. 2014) (mandate issued on Feb. 4,
2015), holding that certain MACBs from the PRC were outside the
scope of the antidumping order.  Fedmet, 755 F.3d at 922.  As a
consequence of the Federal Circuit's holding in Fedmet, the court
has become concerned with Commerce's potentially unreasonable use
of out of scope MACB sales to corroborate the AFA rate.  Although
the court requested that the parties provide it with supplemental
briefing to address this issue, Commerce's responses present post
hoc rationalizations that do not bear on the reasonableness of the
explanations set forth in the IDM.  See Burlington Truck Lines,
Inc. v. United States, 371 U.S. 156, 168-69 (1962) ("The courts
may not accept . . . counsel's post hoc rationalizations for agency
action; . . . an agency's discretionary order [must] be upheld, if
at all, on the same basis articulated in the order by the agency
itself.").  Commerce does not appear to have considered the
possibility that the entries it used to corroborate the AFA rate
were of out-of-scope merchandise.  Because the Federal Circuit's
decision in Fedmet may potentially affect the reasonableness of
Commerce's corroboration of the AFA rate, the court must remand so

that Commerce has the opportunity to address this concern at the administrative level with the benefit of comment from Plaintiffs and Defendant-Intervenors.  See SKF USA Inc. v. United States, 254 F.3d 1022, 1028-29 (Fed. Cir. 2001) ("A remand is generally required if the intervening event may affect the validity of the agency action.") (citing Ethyl Corp. v. Browner, 989 F.2d 522, 524 (D.C. Cir. 1993)).

### IV. Conclusion and Order

Upon consideration of Plaintiffs' motion for judgment on the agency record, Defendant's and Defendant-Intervenors' responses, Plaintiffs' reply, and all papers and proceedings herein, and in accordance with the court's opinion issued on this date, it is hereby

**ORDERED** that this case is remanded to Commerce for further explanations regarding the corroboration of the AFA rate in light of the Federal Circuit's decision in Fedmet Resources Corp. v. United States, 755 F.3d. 912 (Fed. Cir. 2014); and it is further

**ORDERED** that the Final Results is sustained for all other issues discussed above; and it is further

**ORDERED** that remand results are due within sixty (60) days of the date this opinion is entered.  Any responses or comments are due within thirty (30) days thereafter.  Any rebuttal

comments are due within fifteen (15) days after the date responses

or comments are due.

    **SO ORDERED.**


                                                 /s/ Nicholas Tsoucalas
                                                 **Nicholas Tsoucalas**
                                                   **Senior Judge**

**Dated:** March 25, 2015
         **New York, New York**